IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CORSAGE COLLECTION, INC., | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 06-382 |
| | : | |
| v. | : | |
| | : | |
| GN DIAMOND, LLC, et al., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM AND ORDER**

Slomsky, J.                                                    March 26, 2009

## I.    INTRODUCTION

This patent action was filed in 2006 by Corsage Collection, Inc. ("Corsage") alleging six causes of action against Defendants GN Diamond, LLC ("GN Diamond"), SKR Diamonds, Ltd. ("SKR Diamonds"), Eithan Raviv ("Raviv"), and Mark Friedman ("Friedman").[1]  In its Complaint, Corsage seeks (1) a declaratory judgment of non-infringement of Defendants' patent (Count I); (2) a declaratory judgment of invalidity of Defendants' patent (Count II); and (3) a declaratory judgment of unenforceability of Defendants' patent (Count III).  In the Complaint, Corsage also alleges: (1) unfair competition under the Lanham Act (Count IV); (2) tortious interference with contractual relations (Count V); and (3) tortious interference with prospective economic relations (Count VI).  Defendants GN Diamond and SKR Diamonds ("Diamond Defendants" or "Defendants") counterclaimed against Plaintiff for infringement of United States Design Patent D460,379 (the "'379 Patent"). Diamond Defendants, through contractual

---

[1]  Individual Defendants, Raviv and Friedman, are in default.  They have not filed answers to Plaintiff's Complaint.  The motions currently before the court relate only to GN Diamond and SKR Diamonds.

arrangements with Raviv, to whom the '379 Patent was granted, had received the exclusive licence to manufacture and sell the patented jewelry design at issue in this case.

On December 15, 2007, Diamond Defendants filed a Motion for Summary Judgment on Patent Infringement (Doc. No. 55), seeking dismissal of Plaintiff's claim for a declaratory judgment of non-infringement (Count I) and seeking an entry of judgment on Diamond Defendant's Counterclaim that Plaintiff has infringed the '379 Patent.  On December 24, 2007, Diamond Defendants filed a second Motion for Summary Judgment (Doc. No. 60).  This Motion was for partial summary judgment dismissing Plaintiff's claim of patent invalidity, and sought dismissal of Plaintiff's claim for a declaratory judgment of invalidity (Count II).  On January 14, 2008, Plaintiff filed its Combined Response to Defendants' Motions to Dismiss Certain Claims and for Summary Judgment on Infringement (Doc. No. 65).  Plaintiff opposed the Motions of Diamond Defendants, asserting that the factual issues in this case are both material and genuine and that summary judgment should be denied.  Diamond Defendants, on January 28, 2008, filed their Combined Reply in Further Support of their Motions for Summary Judgment (Doc. No. 71). Finally, on February 26, 2008, Plaintiff filed its Notice of Non-Opposition to Summary Judgment on Infringement (Doc. No. 75), conceding only that in the event this Court holds that the '379 Patent is valid, then Plaintiff has infringed the patent by selling jewelry with the flower design.[2]

Subsequent to Plaintiff's Notice of Non-Opposition to Summary Judgment on Infringement, Diamond Defendants, on April 24, 2008, filed a Motion for Summary Judgment Dismissing Plaintiff's Cause of Action for Unfair Competition (Count VI) (Doc. No. 78).

––––––––––––––––

[2]  In view of Plaintiff's Non-Opposition to Summary Judgment on Infringement, Defendants' Motion for Summary Judgment on Infringement will be denied as moot.

Defendants claim that they could not have made this motion earlier because infringement was still in dispute.  Diamond Defendants now argue there is no genuine issue of material fact as to Plaintiff's unfair competition cause of action and that it too should be dismissed.  Plaintiff responded to Defendant's Motion for Summary Judgment on Unfair Competition on May 13, 2008 (Doc. No. 80).

On January 23, 2009, the Court ordered that oral argument would be held on all outstanding Motions on February 5, 2009.  Four days later—and only nine days before the scheduled oral argument—Diamond Defendants filed yet another Motion for Summary Judgment (Doc. No. 84).  This motion sought dismissal of Plaintiff's claims of invalidity (Count II) and Unenforceability (Count III) based upon inventorship.  Oral argument was held on all outstanding Motions on February 5, 2009.  All non-mooted motions are now ripe for decision by the Court.

## II.    FACTUAL BACKGROUND

Plaintiff Corsage is a domestic jewelry distributor that was the exclusive American distributor of floral designed jewelry manufactured pursuant to an Israeli patent.  (Pl. Compl. at 2, 4.)  The floral design used an invisible setting to lock six precious stones around a central, hexagonally shaped stone, creating the appearance of a flower ("Flower Design").  (Id. at 4.)  As noted, Plaintiff is alleging that Defendants, who subsequently obtained rights to a patent for jewelry with a similar floral design, have an invalid patent for their design and that Plaintiff could properly use the Flower Design in the jewelry it was distributing in the United States.  In order to properly understand the factual setting of this case, and to place in proper context the competing claims, a chronology of facts is set forth.

1.  The Flower Design jewelry that Plaintiff distributes is manufactured pursuant to an

Israeli design patent.  The Israeli design patent was procured pursuant to an application by an Israeli jewelry designer named Ezra Boaron, on September 17, 2000.  (Id.)  The Israeli Patent Office issued a design patent to Boaron for the Flower Design on June 11, 2002 (the "Boaron Design").  (Id.)

2.  Boaron transferred his interest in the Boaron Design to an Israeli jewelry manufacturer, Geraldo Jewelry, which subsequently contracted with Plaintiff Corsage to exclusively distribute and promote jewelry featuring the Boaron Design.  (Id.)

3.  On November 16, 2000, two months after Boaron had applied for patent protection for the Flower Design in Israel, another Israeli jewelry designer named Eithan Raviv applied for patent protection for a similar floral jewelry design in the United States.  (Exh. 1, Def.'s Mot. For Summary Judgment Dismissing Claim of Invalidity and Unenforceability Based on Inventorship, '379 Patent [hereinafter '379 Patent].)

4.  Raviv's patent application was submitted on his behalf by his attorney, Defendant Mark Friedman.  (Id.)

5.  Friedman is an Israeli citizen who practices patent law in both Israel and the United States.  Although Friedman was named as a defendant in this case and was served with the Complaint, he has not filed an answer and a default has been entered against him.

6.  Early in 2002, while Raviv's United States patent was pending, Boaron met with Friedman to discuss Friedman representing Boaron in an action against Defendant SKR Diamonds for infringing the Boaron Design in Israel.  (Pl. Compl. at 5-6.)  At that meeting, Boaron showed Friedman the Flower Design.  (Id. at 6.)

7.  At their meeting, Friedman did not inform Boaron that Friedman also represented

Raviv or that Friedman was involved in filing a patent application on Raviv's behalf in the United States for a floral design that was very similar to Boaron's Flower Design.  (Id. at 6.)

8.  Friedman drafted a cease and desist order to send to Defendant SKR Diamond on Boaron's behalf, but never mentioned Raviv's design and its pending American patent.

9.  The United States Patent and Trademark Office ("PTO") issued U.S. Design Patent 460,379 to Raviv in July, 2002, one month after Boaron received his patent for the same design in Israel.  (Id.)

10.  As part of the patent application process in the United States, Raviv was required to affirm the truth of the statements made in his application.  Raviv swore to the PTO that he was the sole inventor of the design for which patent protection was sought.  Accordingly, the '379 Patent listed Raviv as the sole inventor, and the Patent was issued solely in Raviv's name.  (Id.)

11.  Raviv assigned his interest in the '379 Patent to Paco Jewelry Ltd. and Natan Goldman.  Goldman is also an Israeli jewelry designer and is another inventor of the floral design jewelry covered by the '379 Patent.  Goldman was not listed as an inventor in the application for the '379 Patent, or the patent itself.  (Exh. 3, Decl. of Guy Yonay in Support of Mot. for Summary Judgment Dismissing Unfair Competition Claim [hereinafter Yonay Decl.], Assignment of Patent at 1.)

12.  Because Goldman was not listed as an inventor on Raviv's application for the '379 Patent but instead was described to the PTO only as an assignee of the Patent,[3] the PTO did not

_____

[3]  Raviv and Goldman executed an assignment agreement on November 12, 2000, four days before the '379 Patent application was filed on November 16, 2000.  Raviv notified the PTO of the assignment on February 22, 2001, by recording the assignment of the Patent to Goldman with the PTO.  (Yonay Decl., Assignment of Patent at 1; Record of Assignment at 1.)

conduct a review of Goldman's prior art to determine if the floral design submitted by Raviv deserved to be patented.  (See Pl. Post-Hearing Submission on Summary Judgment at 3 [hereinafter Pl. Post-Hearing].)

13.   After the '379 Patent was issued, Raviv and Goldman then contracted with Defendant SKR Diamonds, giving SKR Diamonds an exclusive license to make, use and sell diamond jewelry under the '379 Patent.  (See Def.'s Memorandum of Law in Support of Mot. For Summary Judgment of Patent Infringement, at 4-5.)  Defendant SKR Diamonds manufactures the flower jewelry pursuant to the '379 Patent.  (See id. at 5.)

14.   SKR Diamonds then contracted with GN Diamond to be the sole distributer of the jewelry that SKR Diamonds manufactures based on the '379 Patent.  (See id.)

15.   In 2005, the holder of the Israeli Boaron Design Patent, Geraldo Jewelry, brought a patent infringement suit against Defendant SKR Diamonds in Israel based on Boaron's Design. (Id. at 3; Def.'s Answer, Affirmative Defenses and Counterclaim to Pl.'s Compl. at 7.)  As part of that action, Raviv stated in an affidavit that he was not the sole inventor of the design protected by the '379 Patent, but instead that he had collaborated on the design with his partner, Goldman.  (Exh. 3, Def.'s Mot. for Summary Judgment Dismissing Claim of Invalidity and Unenforceability Based on Inventorship, Raviv Affidavit at ¶ 5 [hereinafter Raviv Affidavit].) Raviv's affidavit stated: "Nathan Goldman and I decided to work jointly with relation to the Flower Design."  (See id. at ¶ 5).  Raviv also stated in his affidavit: "After the submission of the ['397 Patent] design patent registration application, I continued to cooperate with Nathan Goldman . . ."  (See id. at ¶ 9).  Goldman also submitted an affidavit in the Israeli suit in which he corroborated Raviv's statement.  In his affidavit, Goldman stated: "I hereby declare that I am

6

the one who conceived . . . the Model named the 'Flower Model.'"  (See Exh. 4, Def.'s Mot. for

Summary Judgment Dismissing Claim of Invalidity and Unenforceability Based on Inventorship,

Goldman Affidavit [hereinafter Goldman Affidavit].)

    16.   While Plaintiff distributed Flower Design jewelry in United States pursuant to the

Israeli patent, Defendants were also engaged in the manufacture and distribution of the similar

floral jewelry in the United States pursuant to the '379 Patent.  (Pl. Compl. at 7.)

    17.   When Defendants discovered that Plaintiff was concurrently distributing the Flower

Design jewelry, Defendants, through their attorneys, contacted Plaintiff's customers, asserting

that Plaintiff's Flower Design infringed the '379 Patent.  (Id.)

    18.   In the letters written on behalf of Defendants, Defendants' counsel warned Plaintiff's

customers that by continuing to distribute Plaintiff's Flower Design jewelry, they could subject

themselves to liability for patent infringement.  (Id.)

    19.   Upon receiving Defendants' warnings, many of Plaintiff's customers stopped

distributing Plaintiff's Flower Design jewelry.  Some customers demanded that Plaintiff take

back the Flower Design jewelry.  (Id.)

    20.   Plaintiff brought the instant action in 2006 after Plaintiff's customers received the

letters sent by Defendants' counsel.  Plaintiff alleges both that the '379 Patent was invalid and

that Diamond Defendants knew that the '379 Patent was invalid when they threatened Plaintiff's

customers with infringement suits.  (Id. at 9.)

    21.   Plaintiff claims that the '379 Patent is invalid because it only lists Raviv as the

inventor, when United States patent law requires that all inventors be named.  (Pl. Response to

Def.'s Mot. to Dismiss Certain Claims and for Summary Judgment on Infringement at 3.)

22. Plaintiff claims that Raviv and Friedman intentionally omitted Goldman's name from the '379 Patent application so that Goldman would not have to notify the PTO of his prior art that may have been relevant to the patentability of the Flower Design. (Pl. Post Hearing at 3.)

23. Plaintiff's allegations are based upon the affidavits given by Raviv and Goldman in the Israeli patent litigation between Geraldo Jewelry and SKR Diamonds. (Id.) Defendants deny that Raviv and Goldman acted with intent to deceive the PTO. (Def.'s Post-Hearing Submission at 4 [hereinafter Def's Post-Hearing].)

24. Plaintiff further alleges that the '379 Patent is invalid because Raviv and Friedman did not fulfill their obligation to notify the PTO that they had become aware of the Boaron Design while the '379 Patent was pending. (Pl. Compl. at 12.) Plaintiff argues that with respect to the '379 Patent, the Boaron Design is "prior art" and that after Friedman met with Boaron in early 2002, Friedman and Raviv were obligated to notify the PTO about such prior art while the '379 Patent was pending. (Id.) Plaintiff asserts that Friedman and Raviv's failure to notify the PTO of the Boaron Design was intentional and that as a result, the '379 Patent is invalid. (Pl. Post-Hearing at 3.)

25. Plaintiff asserts that SKR Diamonds' role in the 2005 Israeli patent litigation served to notify SKR Diamonds that the '379 Patent was invalid, based on the Raviv and Goldman affidavits procured in connection with that litigation. (Pl. Post-Hearing at 6-7.)

26. In the 2005 Israeli action, SKR Diamonds submitted the Raviv and Goldman affidavits that Plaintiff argues contradict the inventorship of the '379 Patent. (Id.; Raviv Affidavit; Goldman Affidavit.) As a result, Plaintiff claims that Diamond Defendants were aware that the '379 Patent was invalid and acted in bad faith by threatening Plaintiff's customers

with suit for patent infringement based upon a patent they knew to be invalid.  (Pl. Post-Hearing at 4, 7.)

27.   Diamond Defendants refute that they had any knowledge of the '379 Patent's alleged invalidity.  (Def.'s Mot. for Summary Judgment Dismissing Pl.'s Unfair Competition Cause of Action at 7).

28.   Plaintiff further alleges that Defendant GN Diamond engaged in competitive misconduct by misstating the scope of the '379 Patent in its advertisements for the Flower Design jewelry.  (Pl.'s Response to Def.'s Mot. for Summary Judgment at 6-7; Pl. Post-Hearing at 4.)

29.   On its website, GN Diamond makes repeated reference to the patented "process" involved in making the jewelry protected by the '379 Patent.  (Exh. 4, Def.'s Mot. for Summary Judgment Dismissing Pl.'s Unfair Competition Cause of Action, GN Brand Website [hereinafter GN Website].)  The '379 Patent protects only the design of the patent, not the process for making the design.  ('379 Patent.)

30.   Plaintiff claims that GN Diamond's reference to a patented "process" amounts to competitive misconduct, as those references misstate the scope of GN Diamond's patent protection.  (Pl.'s Response to Def.'s Mot. for Summary Judgment at 6-7.)

31.   GN Diamond denies that its advertisement is misleading at all, or that it engaged in any intentional misconduct.  (Def. GN Diamond's Post-Summary Judgment Hearing Submission at 2.)

## III.   LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to

9

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law. Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. Liberty Lobby, 477 U.S. at 247-49.

In ruling on a motion for summary judgment, the Court must view the evidence, and make all reasonable inferences from the evidence, in the light more favorable to the nonmoving party. Liberty Lobby, 477 U.S. at 252. Whenever a factual issue arises which cannot be resolved without a credibility determination, at this stage the Court must credit the nonmoving party's evidence over that presented by the moving party. Liberty Lobby, 477 U.S. at 255. The nonmoving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion. Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989) (citing Liberty Lobby, 477 U.S. at 249). The non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. Id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). Distilled to its essence, the summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury." Liberty Lobby, 477 U.S. at 251-52.

## IV.    DISCUSSION

10

A.     Summary Judgment on Infringement

Plaintiff has filed a Notice of Non-Opposition to Summary Judgment on Infringement,

agreeing that Plaintiff  "does not oppose entry of an order that Corsage's products, as sold, would

infringe the Raviv patent at issue (U.S. Patent No. 460,379) if that patent was valid."  In view of

Plaintiff's concession, the Court will deny Defendant's Motion for Summary Judgment on

Infringement as moot at this time.  The Court further holds that there is a genuine issue of

material fact as to the validity of the '379 Patent and, consequently, Defendant's motion for

summary judgment on this issue will be denied.

B.     Summary Judgment on Invalidity Based on Reasons Other than Inventorship

In their Motion for Summary Judgment Dismissing Claim of Patent Invalidity for reasons

other than inventorship, Defendants allege that Plaintiff has not provided any factual basis for its

claim that the '379 Patent is invalid.[4]  Plaintiff alleges that the '379 Patent is invalid under 35

U.S.C. §§ 101, 102, 103 and 171.  Defendants claim Plaintiff cannot established that the '379

Patent is invalid under any of these statutory sections, and therefore, summary judgment is

appropriate.

Plaintiff has established genuine issues of material fact as to whether the '379 Patent is

valid under 35 U.S.C. § 102(b) and 35 U.S.C. § 103.  Defendant's Motion for Summary

Judgment Dismissing Claim of Patent Invalidity will therefore be denied.[5]

---

[4]  This Motion for Summary Judgment does not address issues of inventorship, which are
addressed by Defendants in their fourth Motion for Summary Judgment, discussed at section
IV.C. below.

[5]  Defendants have also argued that Plaintiff cannot prove that the '379 Patent is invalid
under 35 U.S.C. § 101, 35 U.S.C. § 102(a), 35 U.S.C. § 102(d), and 35 U.S.C. § 171.  However,
because the Court finds that Plaintiff has established a genuine issue of material fact as to

1.  *35 U.S.C. § 102(b)*

Plaintiff claims the '379 Patent is invalid under 35 U.S.C. § 102(b), and has established genuine issues of material fact to prevent entry of summary judgment under this section.

Section 102(b) provides that a patent is invalid if "the invention was patented or described in a printed publication in this or a foreign country . . . more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b). Plaintiff claims that another U.S. Patent, No. 506,621 (the "Bippart Design"), which was patented in the United States more than one year prior to the date of the application of the '379 Patent, is similar to the '379 Patent. The Bippart Design Patent was issued on September 2, 1997, more than three years before the '379 Patent application was filed. (Attach. D, Pl. Resp. to Defs' Mot. for Summary Judgment on Infringement, Invalidity Opinion at Exh. B.) In this regard, the Court finds that Plaintiff has raised a genuine issue of material fact as to the validity of the '379 Patent, and for this reason the motion for summary judgement will be denied.

Plaintiff has provided an Invalidity Opinion by retained patent counsel, which involves an independent prior art search.[6] This search divulged the existence of the Bippart Design.

––––––––––––––––––––

whether the '379 Patent is invalid under 35 U.S.C. § 102(b) and 35 U.S.C. § 103, the Court will withhold a decision on Defendant's claims with respect to the other sections. Defendants may assert whatever defenses they claim arise under the other sections at trial.

 [6] Defendants object to Plaintiff's Invalidity Opinion as proffering a new invalidity argument after discovery was substantially complete, which requires exclusion of the Opinion based upon the factors elucidated in <u>Meyers v. Pennypack Woods Home Ownership Ass'n</u>, 559 F.2d 894 (3d Cir. 1977). Despite the fact that the Invalidity Opinion was offered long after this case commenced, it remains that the Invalidity Opinion was offered by Plaintiff more than fourteen months ago, granting Defendants ample opportunity to conduct their own research on the claims made in the Opinion. The Court will consider the Invalidity Opinion.

(Invalidity Opinion at 6-8.)  The Bippart Design discloses a gemstone jewelry setting that has a continuous outer perimeter and six "petaloid protrusions."  (Invalidity Opinion at 6.)  The Invalidity Opinion states that the Bippart Design "discloses what the patentee would likely assert as the novel feature" of the '379 Patent, namely the "continuous outer periphery defined by six petaloid protrusions."  (Invalidity Opinion at 8.)  If the novel feature of Raviv's design in the '379 Patent has been found to have been patented under the Bippart Design more than one year prior to Raviv's application for the Patent, the '379 Patent may be invalid under Section 102(b).  Plaintiff has established a sufficient genuine issue of material fact that the novel aspect of the '379 Patent was patented more than one year before Raviv applied for the '379 Patent, and therefore Defendants' Motion for Summary Judgment will be denied.

>           2.      *35 U.S.C. §§ 103*

Plaintiff claims that 35 U.S.C. § 103(a) requires a finding that the '379 Patent is invalid. Section 103(a) states in pertinent part that a patent may not be obtained under the following circumstances:

> (a)      A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which the subject matter pertains.

35 U.S.C. § 103(a).  Plaintiff has established genuine issues of material fact to prevent entry of summary judgment on Defendant's claim that the '379 Patent is valid under Section 103(a).

The primary inquiry under Section 103 is "whether the claimed design would have been obvious to a designer of ordinary skill who designs articles of the type involved." Durling v. Spectrum Furniture Inc., 101 F.3d 100, 103 (Fed. Cir. 1996).  In determining whether a design

patent is "obvious" based on prior art, the analysis focuses on whether the prior art "create[s] the same overall visual appearance as the claimed design." Id. The prior art cited by Plaintiff includes the Boaron Design, the Slowinski Patent, and the Bippart Design, noted in Plaintiff's Invalidity Opinion. The fact that both the Slowinki Design and the Bippart Design show a six-petaled flower created from jewels creates a material factual dispute to prevent entry of summary judgment on this claim. Because Plaintiff has established a genuine issue of material fact as to whether the '379 patent is "obvious" in view of the prior art, and thus invalid under section 103(a), Defendants' Motion for Summary Judgment on this claim must be denied.

       C.      <u>Summary Judgment on Invalidity and Unenforceability Based on Inventorship</u>

In Defendants' Motion for Summary Judgment Dismissing Claim of Invalidity and Unenforceability Based on Inventorship, Defendants assert that there is no genuine issue of material fact as to Plaintiff's claims of invalidity (Count II) and unenforceability (Count III) based on inventorship. Plaintiff asserts that the '379 Patent is invalid and unenforceable because the named inventor of the Patent, Raviv, is not the sole inventor of the Patent. Natan Goldman was also an inventor of the '379 Patent, but Goldman's name was not included in the Patent application as an inventor. Plaintiff claims that the omission of Goldman's name from the Patent application was done intentionally in order to deceive the PTO. If this claim is established, the '379 Patent would be invalid and unenforceable.[7]

In support of its contention that Goldman was not included purposefully as an inventor on the '379 Patent application in order to deceive the PTO, Plaintiff provides the two affidavits

---

    [7] 35 U.S.C. 102(f) states that: "A person shall be entitled to a patent unless: (f) he did not himself invent the subject matter sought to be patented." In the United States, all inventors must be named on the patent application for the patent to be valid.

executed by Raviv and Goldman.  These affidavits, procured by SKR Diamonds in 2006 in

support of its claims in litigation pending in Israel, state that Goldman was a co-inventor of the

'379 Patent with Raviv, and change the date of the alleged invention of the '379 Patent.  (Raviv

Affidavit; Goldman Affidavit.)  These affidavits were used by SKR Diamonds to its benefit in

the Israeli litigation in 2006 and were never disclosed to the PTO. These affidavits contain

information inconsistent with the information contained in Raviv's sworn application for the

'379 Patent and raise an inference at this stage of the proceeding that the '379 Patent was

procured through deceit. The Raviv and Goldman affidavits raise a genuine issue of material fact

for Plaintiff to survive a motion for summary judgement on invalidity based on inventorship.

Defendants take a contrary position and argue that there has been no allegation of

deceptive intent against Goldman, the inventor allegedly omitted from the Patent.  They also

claim that the Patent can be corrected under 35 U.S.C. § 256.  The Court disagrees when viewing

the evidence in the light most favorable to Plaintiff.  Section 256 states:

> Whenever . . . through error an inventor is not named in an issued patent and such error
> arose without any deceptive intention on his part, the Director may, on application of all
> the parties and assignees, with proof of the facts and such other requirements as may be
> imposed, issue a certificate correcting such error.

> The error of omitting inventors or naming persons who are not inventors shall not
> invalidate the patent in which such error occurred if it can be corrected as provided in this
> section. The court before which such matter is called in question may order correction of
> the patent on notice and hearing of all parties concerned and the Director shall issue a
> certificate accordingly.

35 U.S.C. § 256.  Defendants never raised their right to correct the '379 Patent until filing their

final motion for summary judgment on January 27, 2009.  The Complaint here was filed on

January 27, 2006, and no reason has been offered by Defendants for not availing themselves of

the rights created under Section 256 for the previous three years.  The Court cannot grant summary judgment based upon speculation that at some date in the future the '379 Patent may be declared valid, if the PTO is informed that Goldman is also an inventor.

Moreover, Defendants cite Stark v. Advanced Magnetics, Inc., 119 F.3d 1551 (Fed. Cir. 1997) for the proposition that because there was no deceptive intent on the part of Goldman, the Court may order the '379 Patent to be corrected to contain Goldman as an inventor, thereby mooting the claim of invalidity and unenforceability based on the inventor's deception to the PTO.  While Stark does stand for this proposition that "Section 256 merely precludes deceptive intention in the inventor that seeks to be restored to a rightful place in the patent [here, Goldman]," the Federal Circuit also noted that lack of deceptive intent on the part of the non-named inventor does not prevent the Court from making a determination as to "whether the listed inventive entity [here, Raviv and his assigns] committed inequitable conduct in filing a false oath" with the PTO.  119 F.3d at 1555-56.  Further, the Federal Circuit cites Burroughs Wellcome Co. v. Barr Lab., Inc., 40 F.3d 1223, 1227 (Fed. Cir. 1994) for the proposition that a "patent may be unenforceable for inequitable conduct when any co-inventors are omitted with deceptive intent;" precisely what Plaintiff alleges is this case.  In Stark, the Court also held that if a patent is unenforceable due to inequitable conduct, it cannot be enforced even by an "innocent" co-inventor: the one who was omitted from the patent through the inequitable deception.  119 F.3d at 1556 ("One bad apple spoils the entire barrel.  Misdeeds of co-inventors, or even a patent attorney, can affect the property rights of an otherwise innocent individual.").

Plaintiff has pointed out the very real concern, that if the omission of Goldman as a named inventor may be easily cured, as Defendants suggest, why have Defendants not cured the

16

omission by correcting the inventorship with the PTO during the lengthy pendency of this suit? Plaintiff has raised the inference that Goldman's name was omitted from the patent application as an inventor in order to hide from the PTO the existence of alleged prior art created by Goldman. Defendants counter that whether or not the PTO known had about Goldman's involvement as a co-inventor, it still investigated the '379 Patent in exactly the same way.  In support of this argument, Defendants state that the classifications of patents searched by the Patent Examiner "actually included" the Design Class in which Goldman's sole prior patent is found. Furthermore, Defendants contend that "the Examiner presumably saw Mr. Goldman's sole registered Patent, and decided it was not sufficiently material to cite as a material reference." (Def. Post-Hearing at 6-7.)  Summary judgment cannot be granted on Defendants' speculations. Whether the Patent Examiner found and considered Goldman's prior patent is the type of factual dispute that renders summary judgment inappropriate.

The ultimate decision of whether Defendants acted with deceptive intent in failing to name Goldman as an inventor of the '379 Patent must be made at a trial.  Plaintiff has presented enough facts to support an inference that a trier of fact could conclude that Defendants acted with an intent to deceive the PTO on the identity of the correct inventors of the '379 Patent. Therefore, Defendants' Motion for Summary Judgment Dismissing Claim of Invalidity and Unenforceability Based on Inventorship must be denied.

D.   Summary Judgment on Unfair Competition

Based on the same facts and reasons discussed above in ruling on Defendants' Motion for Summary Judgment Dismissing Claim of Invalidity and Unenforceability Based on Inventorship, this Court holds that Plaintiff has established genuine issues of material fact as to whether the

'379 Patent was obtained in good faith.  Plaintiff has established that there is a genuine issue of material fact as to whether SKR Diamonds knew that the '379 Patent was invalid at the time they procured the Raviv and Goldman affidavits in 2006.  If SKR Diamonds knew that the '379 Patent was invalid, and yet acted in support of that Patent in the marketplace through misrepresentations in letters from counsel and advertisements that the Patent was valid, then SKR Diamonds may be liable for unfair competition under the Lanham Act.  SKR Diamonds' Motion for Summary Judgment on Unfair Competition must be denied because there remains genuine issues of material fact as to whether SKR Diamonds' marketplace representations to Plaintiff's customers and potential customers were made in a good faith belief that the '379 Patent was valid.  Zenith Electronics Corp. v. Elo Touchsystems, Inc., 182 F.3d 1340, 1354 (Fed. Cir. 1999) (refusing to dismiss an unfair competition claim based on actions taken in support of a patent that may have been taken in bad faith and stating that "[o]bviously, if the patentee knows that the patent is invalid, unenforceable, or not infringed, yet represents to the marketplace that a competitor is infringing the patent, a clear case of bad faith representations is made out").

Plaintiff concedes that Defendant GN Diamond did not have knowledge of the '379 Patent's invalidity at the time it made its representations to the marketplace.  Rather, as against GN Diamond, Plaintiff contends that GN Diamond overstated the scope of the patent protection afforded by the '379 Design Patent, by representing to the marketplace that GN Diamond had a "utility" or "process" patent.  In support of this contention, Plaintiff provides a website describing GN Diamond's "Alito" branded jewelry.  This website describes the "technology" used to create the Flower Design, and states that: "The diamond flower design represents the first-time application of a setting process so revolutionary that it is **protected by a <u>U.S. patent.</u>**"

(GN Website (emphasis in original).)  This sentence incorrectly notes that it is GN Diamond's *process* that is patented, rather than its design.

Utility or process patents confer much greater rights to their holders than do design patents.  If GN Diamond represented to the marketplace that it held a utility or process patent for the manufacture of the design of the '379 Patent, then such misrepresentation could result in liability under the Lanham Act.  The parties dispute the intention and the impact of the advertisements published by GN Diamond, but this dispute itself indicates that there are genuine issues of material fact surrounding this claim.  Because genuine issues of material fact exist as to whether GN Diamond's communications to the market were intentionally misleading, summary judgment will be denied on the unfair competition claim.

## V.    CONCLUSION

For the foregoing reasons, Defendants' Motions for Summary Judgment are denied.  An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CORSAGE COLLECTION, INC., | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 06-382 |
| | : | |
| v. | : | |
| | : | |
| GN DIAMOND, LLC, et al., | : | |
| | : | |
| Defendants. | : | |

## **ORDER**

AND NOW, this 26th day of March, 2009, upon consideration of the Motions for Summary Judgment filed by GN Diamond, LLC and SKR Diamonds, Ltd. (Doc. Nos. 55, 60, 78, and 84), and Plaintiff's Responses thereto, it is hereby ORDERED as follows:

1. Defendants' Motion for Summary Judgment on Patent Infringement (Doc. No. 55) is DENIED as moot;

2. Defendants' Motion for Partial Summary Judgment on Patent Invalidity (Doc. No. 60) is DENIED;

3. Defendants' Motion for Summary Judgment Dismissing Claim of Invalidity and Unenforceability Based on Inventorship (Doc. No. 84) is DENIED; and

4. Defendants' Motion for Summary Judgment Dismissing Plaintiff's Cause of Action for Unfair Competition (Doc. No. 78) is DENIED.

BY THE COURT:

s/ Joel H. Slomsky
JOEL H. SLOMSKY, J.